UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MOLLY MENG,<br><br>    Plaintiff,<br><br>v.<br><br>STEPHEN NYE, INDIVIDUALLY, and<br>DLS GLOBAL, LLC,<br><br>    Defendants. | No. 3:17-CV-00077-M |

## MEMORANDUM OPINION AND ORDER

Molly Meng, Plaintiff, sued Stephen Nye ("Nye"), individually, and DLS Global, LLC ("DLS" or "DLSG") (collectively, "Defendants"), for breach of contract and fraud/fraudulent inducement. Before the Court are Defendants' Motions to Dismiss [ECF Nos. 8, 9] for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); lack of personal jurisdiction under Rule 12(b)(2); improper venue under Rule 12(b)(3); and numerous other motions under Rule 9 and Rule 12. After carefully reviewing the motions, the Court determines that it has subject matter jurisdiction over this action but lacks personal jurisdiction over Defendants.

    I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff resides in Farmers Branch, Texas. Pl. Am. Compl. [ECF No. 10] ¶ 1. Nye states that he is a resident of Florida. S. Nye Aff. [ECF No. 8] ¶ 4. Nye asserts that DLS is a limited liability company with its principal place of business in Fleming Island, Florida. *Id*. ¶ 10. Nye alleges that DLS does not have any offices in Texas, or agents, representatives, employees, officers, managers or owners who are citizens of Texas. Aside from their interactions with Plaintiff, Defendants allege that they lack ties to Texas.

1

On December 13, 2016, Plaintiff alleges that she and DLS entered into a Revenue Based Investment Agreement (the "Agreement"). Pl. Am. Compl. ¶ 8. The Agreement was signed on behalf of DLS by Nye, DLS's managing partner. *Id.* at Ex. A [ECF No. 10-1] at 4. By the terms of the Agreement, Plaintiff invested a "Principal Amount" of $75,000, for which she would get a return. *Id*.

Plaintiff argues that the Agreement entitles her to a guaranteed $150,000 after three years, with payment coming in the form of royalties on DLS's sales for up to three years and then a balloon payment for whatever balance remains. *Id*. Plaintiff alleges that she has only received $3,100 from DLS. *Id*. ¶ 18. DLS argues that Plaintiff's entitlement is restricted to three years' royalties, capped at $150,000. DLS denies that it owes any balloon payment for the difference between the royalty payments and $150,000, and argues that Plaintiff's recovery is limited to potentially unpaid royalties, which they contend are capped at $3,100.

In addition to her claims for breach of contract, Plaintiff claims that Defendants fraudulently induced her to enter the Agreement, and for support points to emails between herself and Nye. Pl. Am. Compl. ¶¶ 19, 25–33. The earliest email was sent on April 30, 2014. *Id*. at Ex. B [ECF No. 10-2] at 2. The Agreement was signed on December 13, 2013. Pl. Am. Compl. ¶ 8.

Nye and DLS initially moved to dismiss the Complaint on February 10, 2017, and February 21, 2017, respectively, arguing that Plaintiff's claims should be dismissed for a variety of reasons under Federal Rule of Civil Procedure 12. ECF Nos. 8, 9. On March 2, 2017, Plaintiff filed her Amended Complaint. Pl. Am. Compl. [ECF No. 10]. On March 16, 2017, Defendants filed supplements to the Motions to Dismiss, contending that the Amended Complaint did not moot the Motions.

## II. SUBJECT MATTER JURISDICTION

Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).[1] District courts generally may hear a case only if it involves a question of federal law or if complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332. The Court concludes that diversity jurisdiction exists in this case.

### A. COMPLETE DIVERSITY

Defendants first argue that complete diversity is lacking. Specifically, Defendants argue that because both Defendants are from the same state, there is not complete diversity. Complete diversity is satisfied when no plaintiff is from the same state as any defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). This has been the law for more than 200 years. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806). There is no requirement that defendants be diverse as to each other. In this case, Plaintiff is a citizen of Texas. Defendants are citizens of Florida; Nye is a resident of Florida, and DLS is a Florida LLC with no officers, managers or owners who are citizens of Texas. S. Nye Aff. ¶¶ 4, 10; *see Harvey. v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[T]he citizenship of a LLC is determined by the citizenship of all of its members."). Because Plaintiff is not from the same state as either Defendant, complete diversity is established.

### B. AMOUNT IN CONTROVERSY

Defendants argue that the jurisdictional amount in controversy is not met. Federal courts cannot sit in diversity jurisdiction when, to a legal certainty, the Plaintiff is entitled to less than $75,000, exclusive of interests and costs. 28 U.S.C. § 1332; *see Danial v. Daniels*, 162 Fed. Appx.

---

[1] Before the Court can reach Defendants' personal jurisdiction and venue motions, it must first consider whether there is proper subject matter jurisdiction. *See Rhurgas AG v. Marathon Oil Company*, 526 U.S. 574, 587–88 (1999). The only exception to this rule is when the personal jurisdiction question is "straightforward" and "presenting no complex question of state law," but "the alleged defect in subject-matter jurisdiction raises a difficult and novel question." *Id.* at 588. In this case, the subject matter question is straightforward and presents no complex question of state law.

288, 290 (5th Cir. 2006) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (superseded by statute on other grounds)). Defendants contend that Plaintiff's recovery is restricted to potentially unpaid royalties under the Agreement because (1) Plaintiff has not sufficiently pled her fraud claim, and (2) the Agreement does not require Defendants to pay Plaintiff $150,000. If true, Plaintiff's recovery would be limited to her claim for unpaid royalties, which Defendants allege is at most $3,100.[2] However, because the Court finds that Plaintiff may recover more than $75,000 on her breach of contract claim, the Court finds that the amount in controversy is met.

### i. Fraud/Fraudulent Inducement

Plaintiff claims that "Nye made false and material representations to Plaintiff regarding the financial and business situation of Defendant DLS Global to induce Plaintiff to enter the Agreement." Pl. Am. Compl. ¶¶ 28–33. Plaintiff presumably wants the Court to consider unwinding the Agreement, requiring Defendants to return Plaintiff's original $75,000, less the $3,100 she has been paid, plus whatever punitive damages the Court finds appropriate. Unless this claim is legally certain to fail, it will satisfy the amount in controversy requirement.

Defendants argue that Plaintiff's fraudulent inducement claim cannot count toward the amount in controversy because it fails as a legal certainty. Specifically, Defendants point out that Plaintiff's inducement claim relies on emails, attached to Plaintiff's Amended Complaint, which are dated after the date that Plaintiff signed the Agreement—meaning that any misrepresentations in those emails could not have induced her to sign the Agreement. *See* Pl. Am. Compl. at Ex. A–

---

[2] Defendants allege that they have paid Plaintiff $3,100 royalties to account for all sales from the three-year investment period. They contend that, if royalties were due at a rate of 10%, but had been paid at a 5% rate, Plaintiff would be entitled to an additional $3,100. In her Amended Complaint, Plaintiff references additional potential sales of $18,000, to which she would be entitled to royalties. Defendants point out that Plaintiff's maximum entitlement from that sale would be a 10% royalty, or an additional $1,800.

4

E. The Court agrees. Actual reliance is an element of fraud. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001). Plaintiff's fraudulent inducement claim must rely on misrepresentations made before Plaintiff entered the Agreement. Without allegations of misrepresentations made before the Agreement was entered, actual reliance cannot be proven, and Plaintiff's fraud claim will likely fail as a matter of law.[3] Plaintiff's fraud claim cannot be used to satisfy the amount in controversy.

### ii. Breach of Contract

Defendants also argue that the jurisdictional amount in controversy cannot be met because the Agreement cannot be read to entitle Plaintiff to $150,000. Interpreting contractual ambiguity is a question of law for the Court to decide. *See*, *e.g.*, *Instone Travel Tech Marine & Offshore v. Int'l Shipping Ptnrs., Inc.*, 334 F.2d 423, 431 (5th Cir. 2003); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). The "Repayment" portion of the Agreement is as follows:

---

**1. REPAYMENT**

**1.1 Principal**. Subject to Investor's consideration rights set forth in Section 2 hereof, DLSG shall pay 2 (two) times the Principal Amount, as a 5% royalty on each gross sale made by DLSG representatives receiving commissions from sale and 10% royalty on each gross sale made by DLSG directly (non-commissioned sale) until such time as 2 (two) times the Principal or ONE HUNDRED AND FIFTY THOUSAND AND NO/100 DOLLARS ($150,000.00) is returned (the "Maturity Date") or by 3 (three) years' time from the "Investment Date."

**1.2 Interest.** No interest shall be applied to the investment return.

**1.3 Prepayment.** DLSG may prepay at any time the whole or any part of the Principal Amount due hereunder without penalty or premium.

---

Pl. Am. Compl. [ECF 10.1] at Ex. A.

---

[3] Defendants also argue that Plaintiff's fraud claim is deficient under Rules 9(b) and 12(b)(6). Because the Court finds that it lacks personal jurisdiction over Defendants, it does not reach these arguments.

The Court does not agree that Defendants' interpretation of the contract is correct to a legal certainty. Clause 1.1 can be simplified to read as follows: "DLSG shall pay Plaintiff $150,000, as a royalty on sales until $150,000 is paid or by 3 years." This reading, if correct, could require DLS to pay Plaintiff $150,000. The Agreement also speaks of prepayment of the principal amount, suggesting that a return of principal—as opposed to a mere payment of royalties—is due. Clause 1.1 ostensibly discusses terms for repaying the principal. Additionally, emails attached to Plaintiff's Amended Complaint appear to show Nye's accord to Plaintiff's saying that DLS had an outstanding balance on a loan to Plaintiff—suggesting that Plaintiff's entitlement was not limited to royalties, but to repayment of a principal.[4] *See* Pl. Am. Compl. at Ex. C.

Under this reading of the Agreement, Plaintiff's damages would be at least two times her investment of $75,000, thus exceeding the jurisdictional amount in controversy requirement. Accordingly, the Court concludes that the amount in controversy requirement has been met, and federal subject matter jurisdiction in this action is proper.

### III. PERSONAL JURISDICTION

Defendants move to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. The Court agrees that it has no personal jurisdiction over Defendants.

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of "mak[ing] a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)). The Court "must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between the facts contained in the parties'

---

[4] Meng to Nye, June 14, 2014: "Thanks, Stephen. Will you still provide financial reports that details (sic) revenues for the month? Am I still getting a portion of the revenue to pay off the loan balance as agreed?" Nye to Meng, June 19, 2014: "Yes. Of course. We plan every month to set aside your portion to place in the account as we agreed. Thanks, Stephen[.]"

affidavits and other documentation." *Id.* at 431 (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)) (internal quotation marks removed).

The Court has the power to exercise personal jurisdiction over a defendant only if the following conditions are satisfied: "(1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *In re Chinese–Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 535 (5th Cir. 2014) (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.2d 174, 177 (5th Cir. 2013)). Because "[t]he Texas long-arm statute extends to the limits of the Constitution," only the second prong of the test is at issue. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

There are two categories of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Defendants argue that the Court has neither general nor specific jurisdiction over either Defendant.

### A.  GENERAL PERSONAL JURISDICTION

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 2846, 2853–54. (2011). Whether a corporation is "at home" in a forum is determined by whether the corporation has sufficiently "continuous and systematic" contacts. *Id.* at 2851. General jurisdiction for a corporate defendant is a high bar. The Supreme Court cautions against its exorbitant exercise. *Daimler AG*, 134 S. Ct. at 754. In all but exceptional circumstances, general jurisdiction exists only where a defendant is incorporated and headquartered. *Id.* at 761 n.19.

Plaintiff argues that the Court has general jurisdiction over each Defendant. However, Plaintiff has not pleaded anything to suggest such a relationship between Defendants and Texas. Nye resides in Florida. S. Nye Aff. ¶ 4. Plaintiff has not alleged that Nye is domiciled in Texas. *See Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 2853–54. In fact, Plaintiff "does not . . . dispute [Nye's] claim that [he] does not reside in Texas, does not own any business in Texas, owns no property in Texas and is not associated with any Texas entity." Pl. Brief in Opp. re: Nye 1st Supp. to Mot. to Dismiss [ECF No. 14] at 6. It is clear that the Court lacks general jurisdiction over Nye. The same is true for DLS. Plaintiff's allegations of DLS's ties to Texas are limited to their Agreement and a handful of brief correspondences in relation to the Agreement. It would be a gross exaggeration to claim that DLS is "at home" in Texas. The Court finds that it lacks general personal jurisdiction over DLS. Having found that the Court lacks general personal jurisdiction over either Defendant, the Court moves on to consider whether Plaintiff has made a prima facie case of specific personal jurisdiction.

### B. SPECIFIC PERSONAL JURISDICTION

#### i. Legal Standard

For the Court to exercise specific jurisdiction over a nonresident who has not consented to suit in the forum, the nonresident must have contacts with the forum that "arise from or are directly related to the cause of action." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Minimum contacts must be met as to each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980). In deciding whether there is specific jurisdiction, the Court focuses on "the relationship between the defendant, the forum, and the litigation." *In re Chinese-Manufactured Drywall*, 753 F.3d at 529.

The Fifth Circuit mandates a three-step inquiry for an analysis of specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton*, 768 F.3d at 433. If the plaintiff establishes the first two prongs, then the burden shifts to the defendant to show that the exercise of personal jurisdiction over it would not be fair or reasonable. *Id.*

The minimum contacts test is a fact-intensive inquiry, the touchstone of which is "whether the defendant's conduct shows that it 'reasonably anticipates being haled into court' [in the forum]." *McFadin v. Gerber*, 587 F.2d 752, 759 (5th Cir. 2009) (quoting *Luv N'Care*, 438 F.3d at 470). Specific jurisdiction cannot be established through random, fortuitous, or attenuated contacts, nor from the "unilateral activity of a third party or another person." *McFadin*, 587 F.3d at 759 (quoting *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 475 (1985)). The Fifth Circuit has recognized that one way to establish minimum contacts is to show that "a tortious act [forming the basis of the complaint] committed outside the forum state is purposefully or expressly aimed at the forum state." *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 344–45 (5th Cir. 2014).

For purposes of a breach of contract claim, in deciding whether a defendant has purposefully availed itself of conducting business in the forum state, the Fifth Circuit has considered the place where the contract was negotiated, the physical presence of the defendant's representatives in the forum, where contract performance is to take place, and any other contract clauses that show that the defendant should have reasonably anticipated being haled into court in

the forum. *See, e.g., Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003).

### ii. Analysis

Plaintiff argues that the Court has specific personal jurisdiction over Defendants because the subject matter of her Amended Complaint took place in Texas. Plaintiff must establish that each Defendant has minimum contacts with Texas or purposefully availed itself of the privileges of conducting activity here.

#### a. Minimum Contacts

Plaintiff's allegations of Defendants' ties to Texas consist of the following:

1) "Defendant has a regular social contact with a Texas resident, which is continuous and systematic[.]"
2) "Defendant has a business relationship with a Texas Resident[.]"
3) "Defendant owns a business which is a party to a contract with a citizen of a state of Texas[.]"
4) "Defendant's misrepresentation to Plaintiff via email constituted fraud which gave rise to the claim being asserted in this district."

Pl. Brief in Opp. re: Nye 1st Supp. to Mot. to Dismiss [ECF No. 14] at 11; Pl. Brief in Opp. re: DLS 1st Supp. to Mot. to Dismiss [ECF No. 15] at 10–11.

Plaintiff makes identical arguments that these four items serve as minimum contacts tying each Defendant to Texas. Ties (1) and (2) appear to refer to Defendants' relationships with Plaintiff, and tie (3) presumably refers to the Agreement. Tie (4) refers to Plaintiff's fraud claim.

The Agreement, standing alone, is insufficient to establish minimum contacts. *See Santander Consumer USA, Inc. v. Anchor Motor Co.*, 2013 WL 10914281, at *3 (N.D. Tex. Apr. 20, 2013) ("The Supreme Court and the Fifth Circuit have long held that a nonresident defendant's contract with a resident plaintiff does not establish minimum contacts." (citing *Burger King*, 471 U.S. at 478; *Moncrief Oil*, 481 F.3d at 311)). Furthermore, "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required

purposeful availment of the benefits and protections of Texas law." *Moncrief Oil*, 481 F.3d at 312. Although Plaintiff presents her correspondence with Defendants as continuous and systematic, the correspondence is largely limited to Plaintiff's inquiries about sales and payment.[5]

Plaintiff points out that specific jurisdiction can be established "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of actions." Pl. Brief in Opp. re: DLS 1st Supp. to Mot. to Dismiss [ECF No. 15] at 11 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)). Plaintiff argues that Defendants' communications with her form the basis of her fraud charge, and that the Court therefore has specific jurisdiction over Defendants. *Id*. However, just as in the Court's discussion of subject matter jurisdiction, Plaintiff's attached correspondence with Defendants cannot form the basis of her fraud charges; these communications took place after Plaintiff signed the Agreement and do not speak to any misrepresentations made to induce Plaintiff to enter the Agreement. Because these communications do not give rise to Plaintiff's fraud claim, they do not amount to minimum contacts sufficient to establish personal jurisdiction.

Plaintiff relies on *Dontos* to argue that Defendants have minimum contacts in Texas because their allegedly "tortious conduct [was] purposefully or expressly aimed at the forum state." Pl. Brief in Opp. re: DLS 1st Supp. to Mot. to Dismiss [ECF No. 15] at 11 (citing *Dontos*, 582 F. App'x at 344–45). If Plaintiff means to argue that her breach of contract claim thereby

---

[5] On April 30, 2014, Nye wrote: "Molly, With the other opportunity discussed. We wanted to run the following as a possible agreement…With the numbers we can see where $68,000 can be returned in $3000 monthly payments over a 40 month period. This is a scenario where the funds will help with growth and equipment without adding an additional financial burden. The deposits could go into the same account currently setup for investment. I have attached last years P&L and the 1st Q of this year. Let me know if this is something that will work. If so, I can send over an agreement. Thanks, Stephen Nye." Pl. Am. Compl. [ECF No. 10] at Ex. B. There is no indication that anything came of Nye's suggested supplemental investment. This is the only evidence Meng submitted that speaks to contacts outside of the Agreement and its execution.

establishes minimum contacts—because Plaintiff, as a Texas resident, felt the harms of the alleged breach—she reads *Dontos* too expansively. *See TransFirst Group, Inc. v. Magliarditi*, ___ F. Supp. 3d ___, 2017 WL 660638, at *4–5 (N.D. Tex. Feb. 15, 2017) (Lindsay, J.).[6] The alleged conduct of Defendants does not amount to minimum contacts in Texas, so Plaintiff has failed to make her necessary prima facie showing.

b. <u>Purposeful Availment</u>

Plaintiff also fails to make the case that Defendants have purposefully availed themselves of the privileges of conducting business in Texas. Plaintiff made no allegations that the contract was negotiated in Texas, that the Defendants' representatives were physically present in Texas, that contract performance was to take place in Texas, or that any clauses of the Agreement imagined ties to Texas. *See, e.g.*, *Moncrief Oil Int'l Inc.*, 481 F.3d at 311. Plaintiff does not provide any other evidence from which the Court could conclude that Defendants purposefully availed themselves of the privileges of conducting business in Texas. The Court concludes that Plaintiff has not shown that Defendants purposefully availed themselves of the privileges of conducting business in Texas.

Because Plaintiff has failed to make a prima facie case of Defendants' minimum contacts in Texas or purposeful availment of the privileges of conducting business in Texas, Plaintiff fails to satisfy the Fifth Circuit's requirements as to either Defendant. *See Monkton*, 768 F.3d at 433. Accordingly, the Court finds that it does not have personal jurisdiction over Defendants.

---

[6] *TransFirst* read *Dontos* narrowly, noting that *Dontos* involved defendants who thwarted a Texas plaintiff's access to assets held in Texas: "In *Dontos*, the Fifth Circuit reversed the district court and held that personal jurisdiction over out-of-state defendants was present where plaintiff alleged that defendants participated in a scheme to fraudulently transfer assets to prevent a Texas creditor-plaintiff from collecting a pre-existing Texas judgment[.] . . . [T]he court in *Dontos* stated: '[W]hen a nonresident defendant receives Texas property or a Texas contract, for the purpose of defrauding a Texas resident, the nonresident defendant is subject to suit in Texas courts.'" *TransFirst*, 2017 WL 660638, at *5.

12

## IV. CONCLUSION

The Court finds that it has proper subject matter jurisdiction, as the parties are completely diverse and the amount in controversy is satisfied. However, the Court finds that Plaintiff has not made a prima facie case for personal jurisdiction, and accordingly, Defendants' Motions to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) are **GRANTED**. Plaintiff's claims against Defendants are **DISMISSED** with prejudice to refiling in the Northern District of Texas.

**SO ORDERED.**

August 8, 2017.

*/s/ Barbara M. G. Lynn*
**BARBARA M. G. LYNN**
**CHIEF JUDGE**